IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GABRIEL BUITRON,**

        **Petitioner,**

**vs.**                                         **CIVIL NO. 13-974-DRH-CJP**

**ERIC HOLDER and JAMES N. CROSS**

        **Respondents.**

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

      Currently before the Court is a Motion to Dismiss filed by Respondents Eric Holder and James N. Cross asking the Court to dismiss Gabriel Buitron's Petition for Writ of Habeas Corpus for lack of jurisdiction (Doc. 17). For the reasons set forth below, the Motion to Dismiss (Doc. 17) is granted, and the Petition for Writ of Habeas Corpus (Doc. 1) is dismissed.

## BACKGROUND

### A. Relevant Facts

      Gabriel Buitron is currently incarcerated in the Federal Correctional Institution at Greenville, Illinois ("FCI-Greenville"). He was arrested and convicted of aggravated homicide in 1997 in Mexico (Doc. 17-1; Doc. 17-3). The Mexican court sentenced him to a term of 330 months' imprisonment (Doc. 17-1; Doc. 17-3). In March 1999, Buitron, an American citizen, was transferred to the United

States to serve the time remaining on his Mexican sentence pursuant to the Treaty on Execution of Penal Sentences between the United States and Mexico ("Prisoner Transfer Treaty" or "Treaty") (Doc. 17-4).

Following his transfer to the United States, the U.S. Parole Commission initiated proceedings to translate Buitron's Mexican sentence into one comparable to what he would have received had he committed the same crime in the United States. The Parole Commission ultimately set a release date of June 29, 2021 after 312 months of incarceration, to be followed by a period of supervised release of 60 months or until the full-term date of his Mexican sentence, whichever is earlier (Doc. 17-3, p. 2).

**B. Buitron's Habeas Petition & Respondents' Motion to Dismiss**

On September 20, 2013, Buitron filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). In his petition, Buitron argues that the Parole Commission's determination violates the Prisoner Transfer Treaty and federal law. In particular, Buitron claims that the combined period of imprisonment and supervised release imposed by the Parole Commission is 372 months, which impermissibly exceeds his Mexican sentence of 330 months (Doc. 1-2, p. 3).

Buitron also argues, in the alternative, that the Parole Commission imposed an "indeterminate term [of supervised release] as a contingent remainder of the sentence of imprisonment," which he claims impermissibly negates his earned good

conduct credits (Doc. 1-2, pp. 9, 11). In other words, as he earns good conduct credits, the amount of time he will spend incarcerated is shortened, while the amount of time he will spend on supervised release is simultaneously extended.

Buitron seeks to have the Parole Commission's Transfer Treaty Determination corrected to 252 months' imprisonment followed by a 60-month period of supervised release (Doc. 1-2, p. 11).

Respondents construed Buitron's petition as attacking the Parole Commission's decision to impose a period of supervised release and the particular length of that period (Doc. 17). They filed their motion to dismiss the petition arguing that Buitron's claims are not cognizable under 28 U.S.C. § 2241 and the Court lacks jurisdiction over the petition (Doc. 17).

Buitron responded that he is not challenging the propriety of the Parole Commission's determination (Doc. 19). Instead, he asserts that "the sole issue" is "the issue of good time credits" and "the calculation of good time credits" by the Federal Bureau of Prisons ("BOP") (Doc. 19). Therefore, he argues, a habeas petition is the proper vehicle for his claims and this Court has jurisdiction over his § 2241 petition (Doc. 19).

## DISCUSSION

The writ of habeas corpus may be granted where the defendant is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). In this instance, Buitron claims the Prisoner Transfer Treaty and

related federal laws have been violated. Based on the nature of Buitron's claims, as an initial matter, the Court will outline the law governing prisoner transfers from Mexico to the United States.

### A. Prisoner Transfers from Mexico to the United States

The Prisoner Transfer Treaty between the United States and Mexico permits the transfer of prisoners from the countries in which they have been convicted to their home countries where they will serve the imposed sentence. Treaty Between the United States of America and the United Mexican States on the Execution of Penal Sentences, Nov. 25, 1976, 28 U.S.T. 7399. Accordingly, American citizens who have been convicted and sentenced to imprisonment in Mexico can be transferred to the United States to serve their Mexican sentences.

Following the prisoner's transfer back to the United States, the United States Parole Commission must adapt the prisoner's foreign sentence so that it can be administered under the laws of the United States. *See* 18 U.S.C. § 4106A(b)(1)(A); *Odili v. U.S. Parole Comm'n*, 474 F.3d 1255, 1259 (11th Cir. 2007); *Asare v. U.S. Parole Comm'n*, 2 F.3d 540, 543 (4th Cir. 1993) (describing Parole Commission's task of "converting the foreign sentence to a surrogate United States sentence"). Specifically, the Parole Commission is required to "determine a release date and a period and conditions of supervised release . . . as though the offender were convicted in a United States district court of a similar offense." 18 U.S.C. § 4106A(b)(1)(A). *See also Odili*, 474 F.3d at 1259; *Asare*, 2 F.3d at 543. The

Parole Commission does not resentence the transferred offender; it simply converts the foreign sentence into a determination of a release date and a period and conditions of supervised release. *Odili*, 474 F.3d at 1259. In setting a release date and term of supervised release, the Parole Commission is constrained by § 4106A(b)(1)(C), which provides that "[t]he combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender." 18 U.S.C. § 4106A(b)(1)(C).

After the Parole Commission has adapted the foreign sentence into terms appropriate for enforcement and service under the laws of the United States, the BOP is charged with administering the adapted sentence. *Bishop v. Reno*, 210 F.3d 1295, 1303 n.11 (11th Cir. 2000); *Asare*, 2 F.3d at 543; *Trevino–Casares v. U.S. Parole Comm'n,* 992 F.2d 1068, 1070 (10th Cir. 1993). Specifically, the BOP calculates, awards, and withholds foreign and domestic good-time credits. *Bishop*, 210 F.3d at 1303 n.11; *Asare*, 2 F.3d at 543; *Trevino–Casares,* 992 F.2d at 1070.

The determinations made by the Parole Commission and the BOP "have separate procedural routes for judicial review." *Bishop*, 210 F.3d at 1303 n.11 (citing *Trevino–Casares,* 992 F.2d at 1069). The Parole Commission's translation of a foreign sentence is tantamount to the imposition of a federal sentence by a district court. *Odili*, 474 F.3d at 1259 (internal citations omitted); *Trevino–Casares*, 992 F.2d at 1069. Therefore, issues regarding the Parole

Commission's determination must be directly appealed to the United States' Court of Appeals in the circuit where the transferee is imprisoned at the time of the determination. *See* 18 U.S.C. § 4106A(b)(2)(A); *Odili*, 474 F.3d at 1259. The Parole Commission's determination cannot be collaterally attacked by way of a habeas corpus proceeding. *Bennett v. U.S. Parole Comm'n*, 83 F.3d 324, 328 (10th Cir. 1996).

Conversely, the BOP's determinations involve the execution rather than the imposition of a sentence. Therefore, dissatisfaction with the BOP's determinations must be addressed in a habeas corpus petition in the federal district court where the transferred offender is incarcerated at the time the petition is filed. *Bishop*, 210 F.3d at 1303 n.11; *Trevino–Casares*, 992 F.2d at 1070.

### B. The Court Lacks Jurisdiction Over the Habeas Petition

In order to determine if this Court has jurisdiction to review the § 2241 petition, the question that must be answered is whether Buitron is attacking the adaptation of his Mexican sentence by the Parole Commission or the execution of his adapted sentence by the BOP.

In his petition, Buitron asserts that the Parole Commission violated the Prisoner Transfer Treaty and federal law by imposing a period of supervised release that extends his sentence beyond the term imposed by the Mexican court, and/or has the practical effect of depriving him of his earned good conduct credits. Recognizing that this Court has no jurisdiction over a challenge regarding the imposition or duration of a term of supervised release set by the Parole

Commission, Buitron claims that he is not challenging the propriety of the Parole Commission's determination. Instead, in an attempt to reframe his challenge into one that can be brought before this Court, Buitron claims that he is attacking the BOP's calculation and application of good conduct credits to his term of supervised release.

While it is true that a transfer treaty prisoner can challenge the BOP's calculation of good conduct credits in a habeas action, the record completely belies Buitron's assertions that he is attacking the BOP's determinations. For example, if Buitron was truly challenging the BOP's calculation and application of his good conduct credits, it stands to reason that he would make arguments and set forth evidence regarding the number of good conduct credits he has already earned, the total number he is projected to earn, and the date on which he is projected to be released from incarceration based on those credits. However, Buitron made no mention of those things. Furthermore, he did not make any argument or set forth any evidence showing that, based on the BOP's calculations, he will be incarcerated or serving his term of supervised release beyond the full-term date of his Mexican sentence. Finally, in his prayer for relief, Buitron did not ask that the BOP recalculate his good conduct credits or his projected release date. Instead, he asked for a redetermination of his term of imprisonment and supervised release (*See* Doc. 1-2, p. 11). In other words, he essentially asked to be resentenced.

Therefore, it is clear that Buitron is collaterally attacking the term of supervised release imposed by Parole Commission. Since he is attacking the

imposition of his adapted sentence, not the execution, his claims are not cognizable under § 2241 and this Court lacks jurisdiction over his claims.[1]

The Court also notes that even if Buitron's claims were cognizable under § 2241, his petition would be dismissed because his claims are meritless. Buitron's claims revolve around the term of supervised release imposed by the Parole Commission, which reads: "[I]mmediately upon release from imprisonment, [Buitron is ordered to] commence serving a 60 month period of supervised release, or until the full term date of your foreign sentence currently calculated to be 2-14-2025, whichever is earlier . . ." (Doc. 17-3).

Buitron first argues that a 60-month term of supervised release term and a 312-month term of incarceration amounts to a combined total of 372 months, which impermissibly exceeds his Mexican sentence of 330 months.[2] However, he is incorrect. His argument incorrectly assumes that his 60-month term of

---

[1] The Fifth Circuit has also held that a challenge to the Parole Commission's imposition of a term of supervised release on the grounds that it has the practical effect of depriving the petitioner of good conduct credits was not cognizable under 28 U.S.C. § 2241. *Russell v. U.S. Parole Comm'n*, 16 Fed.App'x 841, 845 (5th Cir. 2001). *See also Bennett v. U.S. Parole Comm'n*, 83 F.3d 324, 327–28 (5th Cir. 1996). Other circuits have impliedly reached the same conclusion by adjudicating similar claims brought as a direct appeal. *See United States v. Tsui*, 531 F.3d 977, (9th Cir. 2008) (direct appeal adjudicating claim that Parole Commission's determination exceeded foreign sentence and claim that Parole Commission must set a "known period" of supervised release); *Odili v. U.S. Parole Comm'n*, 474 F.3d 1255, 1262–63 (11th Cir. 2007) (direct appeal adjudicating claim that supervised release term was impermissibly increased).

[2] Buitron actually claims that the Parole Commission's adapted sentence could not exceed 312 months, which according to him, is the amount of time he had left to serve on his Mexican sentence at the time he was transferred to the United States (Doc. 1-2). Buitron is incorrect. The statute clearly provides that the combined periods of imprisonment and supervised release "shall not exceed the term of imprisonment *imposed* by the foreign court." 18 U.S.C. § 4106A(b)(1)(C) (emphasis added). Here, the term of imprisonment *imposed* by the Mexican court was 330 months, not 312 months, and therefore the Parole Commission's adapted sentence could not exceed 330 months.

supervised release is mandatory and ignores the language of the determination that says "or until the full-term date of your foreign sentence." This language is specifically included to ensure that his adapted sentence does not exceed his original foreign sentence. *United States v. Tsui*, 531 F.3d 977, 981 (9th Cir. 2008); *Cafi v. U.S. Parole Comm'n*, 268 F.3d 467, 470 n.3 (7th Cir. 2001). "[W]here the period of supervised release would otherwise exceed the duration of the original sentence, supervised release terminates when the full term of the original sentence is completed." *Tsui*, 531 F.3d at 981–82. Therefore, if serving a full 60 months on supervised release would cause Buitron to exceed the duration of his 330-month Mexican sentence, his supervised release will terminate on February 14, 2025 (Doc. 17-3), even though he has only served a portion of the 60-month term of supervised release.

Buitron next argues that the Parole Commission imposed an "indeterminate term [of supervised release] as a contingent remainder of the sentence of imprisonment" (Doc. 1-2, p. 9), which he claims impermissibly negates his earned good conduct credits. Again, Buitron is wrong. The Parole Commission did not impose an "indeterminate term" of supervised release; it imposed a definite term of 60 months, subject to and limited by the binding constraint of § 4106A(b)(1)(C). More importantly, Buitron's argument misapprehends how good conduct credits work. Good conduct credits do not reduce the duration of Buitron's sentence; they only reduce the portion of his sentence that he must serve in prison. *See* 28 C.F.R. § 2.68(a)(5) (explaining that good conduct credits do not "reduce the foreign

Page 9 of 10

sentence or otherwise limit the Parole Commission's authority to establish a period of supervised release extending from the date of actual release from prison to the full term date of the full sentence."). Therefore, as the Ninth Circuit explained, imposing a period of supervised release that lasts as long as the original foreign sentence "does not deny a transferee the benefit of good time credit, but at the same time does not allow good time credit to reduce the duration of the sentence as determined by the sentencing State." *Tsui*, 531 F.3d at 981 (internal citations omitted). Buitron's attempt to secure an adapted sentence that is shorter than his original Mexican sentence is unavailing. Simply put, he must serve 330-months, either in prison or on supervised release. "Most prisoners would gladly accept an extension of supervised release in return for release from confinement." *Tsui*, 531 F.3d at 982 n.8.

## CONCLUSION

Respondents motion to dismiss Gabriel Buitron's habeas petition (Doc. 17) is **GRANTED**. Buitron's claims are not cognizable under § 28 U.S.C. § 2241 and are also meritless. Consequently, Buitron's petition for writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED: February 10, 2014**

Digitally signed by David R. Herndon
Date: 2014.02.10 11:33:38 -06'00'

**Chief Judge**
**United States District Court**